UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DARYL SIMON,

                  Petitioner,

          -against-

UNITED STATES OF AMERICA,

                  Respondent.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _7/2/2014_

**OPINION AND ORDER**

12 CV 5209 (ER)

Ramos, D.J.:

    Petitioner Daryl Simon ("Simon" or "Petitioner") moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"), alleging ineffective assistance of counsel in violation of the Sixth Amendment and a resultant denial of due process as guaranteed by the Fifth Amendment. Doc. 1 ("Motion"). In addition, Petitioner accuses the Government of breaching the terms of their plea agreement. *Id.* For the reasons set forth below, Petitioner's motion is DENIED to the extent it alleges a breach of the plea agreement. The Court reserves judgment on Petitioner's ineffective assistance claim, pending an evidentiary hearing.

I.    **Factual Background**

    **A. The Initial Credit Card Fraud Offense**

    On May 11, 2006, Petitioner and another individual entered a Target store, located at the Palisades Center Mall in West Nyack, New York, and attempted to purchase electronic equipment using several different credit cards in the name of "D. Simon." *See* Resp't's Mem. of Law in Opp'n Ex. A (the "PSR"), ¶ 14. They then entered a parked car in the mall parking lot, where they were approached by police officers. *Id.* Petitioner admitted to the officers that he had been inside the store and was in possession of four counterfeit credit cards bearing his name

and someone else's account number.  *Id.*  The officers found a laptop with an attached encoding device.  *Id.*  They saw a credit writing program on the laptop's screen, along with a list of fifty credit card numbers.  *Id.*  Petitioner was also in possession of a data flash drive that was subsequently found to contain 3,200 account numbers, with corresponding identification information, for credit cards belonging to other people.  *Id.* ¶¶ 14, 16.  Petitioner admitted to possessing these numbers for the purpose of making unauthorized purchases or for resale.  *Id.* ¶ 17.  Petitioner was arrested approximately three months later, on August 16, 2006.  *Id.* ¶ 18.

### B.  The 2007 Plea Proceeding

On September 25, 2007, Magistrate Judge George A. Yanthis accepted Petitioner's guilty plea to an Information charging him with one count of access device fraud in violation of 18 U.S.C. §§ 1029(a)(3) and 2 (the "2007 Information").[1]  *Id.* ¶ 19.  Specifically, Petitioner pled to having possessed account information for over 1,000 credit cards issued to other people.  *Id.*[2]

### C.  Failure To Appear for Sentencing

This Court, per the Hon. Charles L. Brieant, issued a warrant for Petitioner's arrest on December 5, 2007, based on violations of the terms of his release.  *Id.* ¶ 20.  Nevertheless, Petitioner failed to appear for his sentencing, which had been scheduled for January 3, 2008.  *Id.*

---

[1] The Information is Doc. 12 in case No. 07 Cr. 474.

[2] Page 15 of the transcript of the 2007 plea proceeding, which is Doc. 16 in case No. 07 Cr. 474, records the following exchange between the Court and Petitioner:

> Q.  And were there approximately -- the government mentioned approximately 3200 counterfeit access devices.  Is that what you possessed?
>
> A.  Approximately, yes, your Honor.
>
> Q.  And did you do that knowingly and willfully, you knew what you were doing?
>
> A.  Yes, your Honor.

The sentencing proceedings were rescheduled for January 17, 2008.  *Id.*  Petitioner failed to appear for the rescheduled sentencing.  *Id.*  On March 25, 2008, a grand jury returned an indictment that charged petitioner with failure to appear in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1)(A)(ii) (the "Indictment").  *Id.* ¶ 21.[3]

### D.  The Subsequent Credit Card Fraud Offense

On May 14, 2008, law enforcement officers entered a basement apartment in the Bronx where Petitioner was thought to be residing.  *Id.* ¶ 21.  The officers observed various items upon entering, including computers, hard drives, a high-resolution printer, a credit card embossing machine, a credit card skimming and encoding machine, and a gun silencer.  *Id.*  Petitioner was not present at the time, but officers confirmed with the landlord and some of the neighbors that he had been seen in the apartment within that past week.  *Id.*  They also saw photographs of Petitioner and several identification cards in Petitioner's name.  *Id.*  One of the computers contained 1,479 credit card numbers and images of fake identification cards in the process of being made.  *Id.*

Petitioner was arrested approximately five months later, on October 1, 2008.  *Id.* ¶ 22.

### E.  The Plea Agreement

The parties entered into a Plea Agreement on January 13, 2010.  *See* Resp't's Mem. of Law in Opp'n Ex. B (the "Plea Agreement").  The Government agreed to accept Petitioner's plea to a two-count superseding information, which charged Petitioner with failure to appear for sentencing and with possession of approximately 1,200 unauthorized access devices (the "Superseding Information").  *See* Plea Agreement at 1-4.[4]  Those charges were in addition to the

---

[3] The Indictment is Doc. 1 in case No. 08 Cr. 260.

[4] The Superseding Information is Doc. 10 in case No. 08 Cr. 260.

one count of access device fraud covered by the 2007 Information.  In the 2010 Plea Agreement, the parties stipulated that the offense charged in the 2007 Information involved 250 or more victims, with a loss amount between $1 million and $2.5 million, and that the offense charged in Count Two of the 2008 Superseding Information involved fifty or more victims, with a loss amount between $400,000 and $1 million.  *Id.* at 3-4.  The parties stipulated that the combined base offense level for purposes of the Sentencing Guidelines was 34.  *Id.* at 4.

The parties also stipulated that, assuming Petitioner clearly demonstrated acceptance of responsibility for all three offenses with which he had been charged, a two-level reduction would be warranted under U.S.S.G § 3E1.1(a).  *Id.* at 4.  In other words, despite Petitioner's previous obstructive conduct, he would be granted the reduction if he accepted full responsibility for both the obstruction and the underlying crimes.  *See id.* at 4 n.2.  The Government reserved the right to:

> seek denial of the adjustment for acceptance of responsibility and/or imposition of an adjustment for obstruction of justice, regardless of any stipulation . . ., should the defendant move to withdraw his guilty plea once it is entered, or should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of [the Plea Agreement], that constitutes obstruction of justice or (ii) committed another crime after signing [the Plea Agreement].

*Id.* at 7 (citations omitted).

With the two-level reduction, the parties stipulated to a total adjusted offense level of 32 and a criminal history category of VI, resulting in a stipulated Guidelines range of 210 to 262 months' imprisonment (the "Stipulated Guidelines Range").  *Id.* at 5-6.

The Plea Agreement also contained a waiver of Petitioner's right to file a direct appeal or to seek collateral review of a sentence within or below the Stipulated Guidelines Range.  *Id.* at 8. The provision was binding regardless of whether "the Court employ[ed] a Guidelines analysis

4

different from that stipulated to [in the Plea Agreement]." *Id*.  To the extent an appeal was not barred by the waiver, that appeal would be "limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the . . . stipulation." *Id*.

### F.   The 2010 Plea Proceeding

Petitioner appeared before the Hon. Stephen C. Robinson on January 13, 2010, at which time he pled guilty to the Superseding Information. *See* Resp't's Mem. of Law in Opp'n Ex. C ("Plea Tr.").  After Petitioner was sworn, the Court questioned him regarding his attorney, Mr. Richard D. Willstatter.  Petitioner replied in the affirmative when asked whether he "had enough of an opportunity to discuss [the] case" with his attorney.  Plea Tr. at 5.  Petitioner also confirmed that he was fully satisfied with the representation and advice that his attorney had given him.  *Id*.  In response to a series of questions, Petitioner then confirmed that he had had sufficient time to discuss the Plea Agreement with his attorney, that he understood the document completely, that he did not have any questions for the Court regarding the contents or meaning of the Plea Agreement, and that he understood that the Plea Agreement represented the complete understanding between him and the Government.  *Id*. at 13-14.  The Court asked Petitioner twice whether he understood the Plea Agreement, and Petitioner provided an affirmative response both times.  *Id*.  Nevertheless, the Court directed Petitioner to look at the Plea Agreement once again and spend any time he needed with his attorney prior to signing it.  *Id*. at 15.

Once Petitioner signed the Plea Agreement, the Court continued the allocution by discussing certain of the Agreement's specific provisions.  *See id.* at 16.  The Court began with the Guidelines calculation.  *See id*. at 17-20.  The Court confirmed that Petitioner understood that the Court might calculate a Guidelines range that was higher or lower than the Stipulated Guidelines Range.  *Id*. at 18.  Petitioner also verified that he understood that, "if the Court were

5

to find a different guideline range than the one calculated in [the] plea agreement, [Petitioner] could not appeal [his] guilty plea based on the fact that the guideline range in [the] plea agreement was different than the one the Court ultimately found." *Id.*

The Court read and discussed a provision in which Petitioner waived his right to challenge the Government's failure to produce discovery, Jencks Act, *Brady* or *Giglio* material. *Id*. at 21-22.  Petitioner was asked again if he needed any additional time to discuss the Plea Agreement with his counsel or if he wanted to discuss anything with the Court.  *Id*. at 22-23. Petitioner indicated that he did not.  *Id*. at 23.

The Government then asked the Court to specifically allocute Petitioner as to his understanding of the direct and collateral appeal waivers with respect to sentences at or below the Stipulated Guidelines Range.  *Id.*  The following exchange occurred:

> THE COURT:  Do you understand that?
>
> Ms. Skotko[5] is referring to the first full paragraph on Page 8.  And, Mr. Simon, the question is:  Do you understand that that paragraph states that you are waiving any right to file an appeal, either a direct appeal or pursuant to Section 2255 or 2241 of Title 28?  You're agreeing that you will not be able to file any appeal, as long as your sentence is at or below the stipulated guideline range; that is, if you receive any sentence at the 262 months range or below, you are waiving any right to appeal that sentence, pursuant to [the Plea Agreement].
>
> Do you understand that?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  So that if this Court were to sentence you to 262 months, you would not be able to appeal that sentence.
>
> Do you understand that?
>
> THE DEFENDANT:  Yes, I understand.

---

[5] Anna M. Skotko was the Assistant United States Attorney representing the Government at Petitioner's plea hearing.

> THE COURT:  You're giving up that right?
>
> THE DEFENDANT:  Yes, your Honor.

*Id*. at 23-24.

After determining that Petitioner fully understood the rights that he would enjoy at trial, the Court asked the Government to describe the maximum penalties for the offenses in Counts One and Two of the Superseding Information.  *See id*. 27-34.  The Court then asked Petitioner to confirm the factual basis for his guilty plea to those two counts.  *Id*. at 35-44.  During the discussion of Count Two, the following exchange occurred on the record:

> MS. SKOTKO:  First of all, since it's in the plea agreement and the information, the defendant acknowledges that he possessed approximately 1200 account numbers and corresponding account information.
>
> MR. WILLSTATTER:  Yes.  As far as that's concerned, your Honor, we are not disputing that.  We haven't seen it.  We think that the estimate is correct, but you know, Mr. Simon doesn't have access to it, so we can't dispute the number.  We will not be disputing the number.  But I don't know that we have an actual knowledge of like how many hairs do I have on my head.
>
> THE COURT:  Mr. Simon, do you agree, though, that you had a number that would approximate 1200 account numbers in your computer?  You had multiple hundreds of those numbers?  Is that fair to say?
>
> THE DEFENDANT:  Multiple hundreds, yes, your Honor, it's fair to say.
>
> THE COURT: Ms. Skotko, any other questions?
>
> MS. SKOTKO:  Yes.  That he possessed those numbers with the intent to defraud, specifically.
>
> THE COURT: Mr. Simon?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Is it fair to say that you possessed the account numbers and corresponding account information, in order to defraud other people and banks?

THE DEFENDANT:  Yes, your honor.

*Id.* at 41-42.

Petitioner also agreed to forfeit at least $243,164.66, representing the amount of proceeds obtained as a result of the offense charged in Count Two.  *Id.* at 43.

Based on the allocution, the Court accepted Petitioner's guilty plea to Counts One and Two of the Superseding Information, finding that Petitioner was fully competent and capable of entering an informed plea and that the plea was "knowing and voluntary, and [was] supported by an independent factual basis for each and every element of the crime charged."  *Id.* at 44-45.

### G.  The Sentencing Hearings

On June 24, 2010, Petitioner appeared before Judge Robinson for sentencing on the 2007 Information charging one count of access device fraud and the Superseding Information charging one count of failure to appear and one count of access device fraud.  *See* No. 08 Cr. 260, Doc. 20.  Prior to that date, the Government had submitted a sentencing memorandum that noted, among other things, that Petitioner's criminal history category should be lower than that contained in the Plea Agreement[6] and that certain of the photographs that Petitioner submitted to the Court, allegedly showing Petitioner engaging in charity work, appeared to have been altered with his image superimposed.  Resp't's Mem. of Law in Opp'n Ex. D, at 10-12, 14-16.  Judge Robinson adjourned the sentencing so that the parties could investigate this latter point—along with concerns regarding the authenticity of certain letters submitted to the Court on Petitioner's behalf—more fully.  *See id.* Ex. E ("Sentencing Tr."), at 2-5.

---

[6] The Government asked the Court to adopt the Presentence Report, which determined that Petitioner's criminal history category was V.  Resp't's Mem. of Law in Opp'n Ex. D, at 10; *see also* PSR ¶ 86.  The revised calculation, with an offense level 32 and criminal history category V, would yield a Guidelines range of 188 to 235 months' imprisonment.  Sentencing Memo at 13-14.

The Government subsequently submitted two letters, dated July 12, 2010 and July 14, 2010, to the Court.  *See id.* at 4.  Those letters provided additional information demonstrating that some of Petitioner's sentencing submissions were, indeed, fraudulent.  *See* Resp't's Mem. of Law in Opp'n at 11.  In light of this conduct by Petitioner, the Government advocated for a denial of the two-level reduction for acceptance of responsibility.  *See id.*  This would result in an offense level of 34 and, with a criminal history category of V, would bring the applicable Guidelines range to 235 to 293 months' imprisonment.  *See id.*

When the sentencing resumed on July 15, 2010, Judge Robinson noted that he had offered Petitioner an opportunity to hire an investigator at the Court's expense in order to have a "full and fair chance" to address the issue of the fraudulent submissions.  Sentencing Tr. at 4-5.  The Court then found that some, but not all, of the letters and photographs that Petitioner had submitted were fraudulent.  *See id.* at 4-16.  The Court noted that, when the authenticity of those submissions was first called into question, Petitioner failed to acknowledge that there was an issue.  *Id.* at 17.  The Court stated that Petitioner, "[l]et it play out because he thought he could get away -- thought it would help him."  *Id.*  The Court determined that Petitioner "engaged in multiple instances of obstruction that are not of a trivial nature" and found that this obstructive conduct amounted to a "carefully constructed scheme to mislead this Court."  *Id.* at 17-18.  In light of Petitioner's conduct, the Court denied the two-point reduction for acceptance of responsibility, finding that Petitioner "could not have fully accepted responsibility for the frauds that he's committed when he would even come to his sentencing and commit more frauds on this Court intentionally and knowingly."  *Id.* at 19.

The Court then confirmed, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, that Petitioner had reviewed the Presentence Report with his attorney and that he was satisfied with his attorney's representation.  Sentencing Tr. at 21-23.

Prior to imposing sentence, the Court addressed the nature and circumstances of the offense, and the history and characteristics of Petitioner, as required by 18 U.S.C. § 3553(a).  *Id.* at 43-48.  After emphasizing the egregiousness of Petitioner's attempt to defraud the Court, the Court sentenced Petitioner to 285 months' imprisonment, which was within the 235-293 month range calculated by the Court following the denial of the two-level reduction.  *Id.* at 46-48, 51. The Court also ordered restitution in the amount of $263,164.66.  *Id.* at 51.[7]

### H.  Direct and Collateral Appeal

Petitioner filed a Notice of Appeal on July 22, 2010.  No. 08 Cr. 260, Doc. 18.  On June 13, 2011, the Second Circuit granted both defense counsel's motion pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the Government's motion for summary affirmance.  No. 08 Cr. 260, Doc. 22.

Petitioner filed the instant motion on July 3, 2012.  Doc. 1.  He argues that, because of ineffective assistance of counsel, he (1) did not knowingly and voluntarily agree to the collateral review waiver and (2) was denied due process of law by virtue of an improperly enhanced Guidelines calculation.  *See* Pet'r's Mem. in Supp. at 3-5.  He also argues that the Government breached the Plea Agreement by advocating that he be denied a two-level reduction for acceptance of responsibility.  *See id.* at 5-6.  Finally, Petitioner argues that he is entitled to an evidentiary hearing with respect to his claims.  *See id.* at 6-7.

---

[7] The Order of Restitution that Judge Robinson ultimately signed on August 2, 2010 provided for restitution in a slightly lower amount of $242,954.73.  *See* Resp't's Mem. of Law in Opp'n Ex. F.

## II.    Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition the

sentencing court to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255(a).  Such a

motion must allege that (1) the sentence violated the Constitution or the laws of the United

States; (2) the court did not have jurisdiction to impose the sentence; (3) the sentence exceeded

the maximum sentence authorized by law; or (4) the sentence "is otherwise subject to collateral

attack."  *Id.*  A "collateral attack on a final judgment in a federal criminal case is generally

available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing

court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in

a complete miscarriage of justice.'"  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)

(quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

An evidentiary hearing shall be granted with respect to a Section 2255 petition "[u]nless

the motion and the files and records of the case conclusively show that the prisoner is entitled to

no relief."  28 U.S.C. § 2255(b).  To avoid summary dismissal without the benefit of a hearing, a

petitioner is required to establish only that his claim is plausible.  *See Puglisi v. United States*,

586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir.

2000)).  However, if the record contradicts the petitioner's factual assertions, the court is not

required to assume that the claims are credible.  *Id.* at 214.  After it has reviewed both the

petitioner's submissions and the underlying record,

> [t]he court then determines whether, viewing the evidentiary proffers, where
> credible, and record in the light most favorable to the petitioner, the petitioner,
> who has the burden, may be able to establish at a hearing a *prima facie* case for
> relief.  If material facts are in dispute, a hearing should usually be held, and
> relevant findings of facts made.

*Id.* at 213.

Because Petitioner is a *pro se* applicant, his submissions are "held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam)).  Further, the Court must construe Petitioner's submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "A pro se litigant, however, is not exempt 'from compliance with relevant rules of procedural and substantive law.'"  *Johnson v. New York*, 851 F. Supp. 2d 713, 719 (S.D.N.Y. 2012) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III.    Discussion

### A.   Petitioner Is Entitled to an Evidentiary Hearing on His Ineffective Assistance of Counsel Claim

An ineffective assistance of counsel claim requires a criminal defendant to demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," measured in accordance with "prevailing professional norms," such that he was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Courts must endeavor to "eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

12

### i. The Collateral Review Waiver in the Plea Agreement Does Not Preclude Petitioner's Claim That Counsel Was Ineffective During Plea Negotiations

The parties disagree as to whether Petitioner knowingly and voluntarily waived his right to collateral review of his sentence.  *See* Pet'r's Mem. in Supp. at 3-4; Resp't's Mem. of Law in Opp'n at 14-16.  However, this dispute is of no moment given the nature of Petitioner's ineffective assistance claim, which would survive a valid waiver in any event.

Appeal waivers contained in plea agreements are presumptively enforceable as long as they are entered into knowingly and voluntarily.  *See United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement."); *Bossous v. United States*, No. 11 CIV. 5303 DLC, 2012 WL 4435312, at *2-3 (S.D.N.Y. Sept. 26, 2012).  However, when a petitioner's challenge goes to the validity of the plea agreement itself, and not to the merits of his sentence, that challenge escapes the reach of the waiver.  *See Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002) ("[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement."); *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam) ("Even if the plain language of the plea agreement barred this appeal, we would not enforce such a waiver of appellate rights in this case because the defendant is challenging the constitutionality of the process by which he waived those rights."); *Bossous*, 2012 WL 4435312, at *4 ("To avoid the waiver, the petitioner must contend that she received ineffective assistance of counsel in entering her plea . . . ."); *Yushuvayev v. United States*, 532 F. Supp. 2d 455, 470 (E.D.N.Y. 2008) (observing that the

Second Circuit's decision in *United States v. Oladimeji*, 463 F.3d 152 (2d Cir. 2006), "clearly contemplates that a defendant alleging ineffective assistance of counsel shall not be barred by a waiver of the right to appeal from bringing a collateral attack under Section 2255 asserting that his counsel's recommendation that he accept the plea agreement containing the waiver was itself ineffective assistance").  "A guilty plea may be involuntary, and thus invalid, if entered into without the effective assistance of counsel as determined by the *Strickland* test of objectively deficient performance plus prejudice."  *United States v. Miley*, 119 F. App'x 330, 332 (2d Cir. 2005) (summary order).

Here, Petitioner claims that his Fifth and Sixth Amendment rights were violated because his attorney failed to investigate the loss amounts and the number of victims defrauded and that, as a result, his sentence was erroneously enhanced.  *See* Pet'r's Mem. in Supp. at 4-5; Pet'r's Reply at 2-6.  In other words, Petitioner alleges that counsel's purported failure to investigate the number of victims and the amount of loss rendered the plea bargaining process itself—along with counsel's recommendation that Petitioner sign the Plea Agreement—constitutionally infirm.[8]  Because this claim goes to the validity of the process by which the waiver was obtained, that claim cannot be precluded by the collateral appeal waiver.

### ii.  The Record Does Not Conclusively Show That Counsel Acted Reasonably in Not Challenging the Sentencing Enhancements

There is no question that the Stipulated Guidelines Range was calculated based on loss amounts between $1 million and $2.5 million for 2007 and between $400,000 and $1 million for 2008.  *See* Plea Agreement at 3-4.  The 2007 loss amount was based on the Guidelines' $500 assumed minimum loss per access device.  *See id.* at 3; *see also* U.S.S.G. § 2B1.1, Application

---

[8] Petitioner's papers expressly ask the Court to "vacate his judgment and conviction" and return him to the "pre-plea stage."  Pet'r's Reply at 7-8.

Note 3(F)(i).  The 2008 loss amount was based on a $243,164.66 "actual loss amount for 144 of the unauthorized access devices," combined with the $500 minimum assumed loss for "unauthorized access devices for which no actual loss amount is presently known or where the loss amount was less than $500."  Plea Agreement at 4.  Defense counsel stated at the 2010 plea hearing that the $243,164.66 figure had been agreed upon "for restitution and, correspondingly, for forfeiture, on the basis of some information, and not just a number that was picked out of the air."  Plea Tr. at 43-44.  An Order of Restitution was entered subsequent to the imposition of sentence; that Order provided for restitution in a slightly lower amount of $242,954.73, based on a spreadsheet identifying 23 specific victims.  *See* Resp't's Mem. of Law in Opp'n Ex. F.

With respect to the number of victims, there is no question that the parties stipulated to victim counts of 250 or more in 2007 and fifty or more in 2008.  As Petitioner correctly observes, the Guidelines define "victim" as, in pertinent part, "any person who sustained any part of the *actual loss* determined under" the subsection providing for loss-based enhancements.  U.S.S.G. § 2B1.1, Application Note 1 (emphasis added); *see* Pet'r's Reply at 2-3.  However, with the exception of the actual loss amount agreed upon for restitution purposes, the Plea Agreement relied exclusively on assumed minimum losses.  Thus, it seems clear from the face of the Plea Agreement that the loss figures and/or the victim counts were negotiated as part of the plea bargaining process.  What is not evident from the record, however, is the extent to which Petitioner's counsel tested the accuracy of those numbers as opposed to merely accepting the Government's representations.  Equally unattainable from the record is knowledge of whether, to the extent counsel chose not to challenge the Government's figures, that choice represented a strategic decision believed to be in the best interest of his client as opposed to a deficiency in the representation.

The Government has maintained throughout the litigation that it was prepared to come forward with evidence to substantiate its position regarding the number of unauthorized access devices at issue (3,200 in 2007 and 1,200 in 2008), and it rejects Petitioner's claim that his sentence was erroneously enhanced.  *See* Resp't's Mem. of Law in Opp'n at 17.  The transcript of Petitioner's 2007 plea hearing shows that, at that time, Petitioner confirmed the accuracy of the 3,200 figure for the 2007 credit card fraud offense.  *See supra* note 2.  Then, during the 2010 plea hearing, Petitioner's counsel represented that both he and Petitioner believed that the Government's estimate of the 2008 figure was correct and that there was no basis to dispute it.  Plea Tr. at 41-42.  Petitioner confirmed that the number of account numbers and corresponding account information at issue with respect to the 2008 credit card fraud offense was in the "multiple hundreds."  *Id.* at 42.

Petitioner's statements during his plea allocutions are to be afforded significant weight. *See Marcelin v. Garvin*, No. 97 CIV. 2996 (AJP), 1999 WL 977221, at *7 (S.D.N.Y. Oct. 26, 1999) (collecting cases).  However, the current record does not conclusively foreclose Petitioner's ineffective assistance claim.  Because Petitioner allegations of ineffective assistance speak to counsel's purported actions—or inactions—outside the presence of the Court, the merits of Petitioner's claim cannot be finally adjudged without an evidentiary hearing.  *See Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (observing that the petitioner's claim "involves off-the-record interactions with his trial counsel and therefore cannot be determined by examining the motion, files, and records before the district court"); *Armienti v. United States*, 234 F.3d 820, 825 (2d Cir. 2000) ("These issues implicate actions taken by counsel outside the presence of the trial judge and therefore could not ordinarily be resolved by him without such a hearing.").  In other words, Petitioner has come forward with at least a plausible claim, based on the record

before the Court, that his attorney failed to investigate or challenge the data underlying the sentencing enhancements and thus improperly advised him to sign the Plea Agreement. Nothing more is required at this stage in the proceedings; summary dismissal would therefore be inappropriate, and an evidentiary hearing is warranted with respect to Petitioner's Sixth Amendment claim.

### B.  The Government Did Not Breach the Plea Agreement

Petitioner also claims that the denial of the two-point reduction for acceptance of responsibility constituted a breach of the Plea Agreement, and he seeks specific enforcement of the Agreement's terms. *See* Pet'r's Mem. in Supp. at 5-6. This argument is precluded by Petitioner's failure to raise it on direct appeal. *See Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) ("A second rule that applies in the Section 2255 context prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice."); *see also* Motion at 8 (acknowledging that Petitioner did not assert this argument on direct appeal).[9]

Even if it were not precluded, Petitioner's argument would be unavailing, as the Plea Agreement expressly preserved the Government's right to "seek denial of the adjustment for acceptance of responsibility . . . should it be determined that the defendant . . . engaged in conduct . . . that constitutes obstruction of justice." Plea Agreement at 7.[10] During the

---

[9] Petitioner attributes his failure to raise this argument on direct appeal to the purported ineffectiveness of his appellate counsel. *See* Motion at 8. However, any such claim of ineffective assistance necessary fails:  since Petitioner's argument for specific enforcement is meritless in any event, he could not have been prejudiced by counsel's failure to raise the issue on appeal.

[10] *Santobello v. New York*, 404 U.S. 257 (1971), is distinguishable in this regard.  In that case, the prosecutor agreed, as part of the plea negotiations, not to make a sentencing recommendation. *Id.* at 258.  A different prosecutor appeared at the sentencing proceeding and, despite what his colleague had promised, recommended that the court impose the maximum, one-year sentence. *Id.* at 259.  The Supreme Court vacated the judgment on the grounds that,

sentencing proceedings, the Court found that Petitioner had engaged in "multiple instances of obstruction"—namely, the submission of fraudulent letters and photographs to the Court. Sentencing Tr. at 17. Petitioner now argues that "he should not have been held responsible for the forged or faked letters as he was incarcerated when these letters were written and tendered to him and defense counsel." Pet'r's Mem. in Supp. at 6. But the Court's finding of obstruction was not based solely on the fact that the fraudulent documents were submitted in the first place, but also on Petitioner's failure to acknowledge the issue when it was raised, preferring to let things "play out" because he believed it would be to his benefit. Sentencing Tr. at 17.

The Government was therefore entitled, based on the Court's findings and pursuant to the express terms of the Plea Agreement, to argue that Petitioner did not merit a two-level reduction for acceptance of responsibility. It was Petitioner's own conduct, and not a breach by the Government, that led to the loss of the two-level reduction and the imposition of a sentence above the Stipulated Guidelines Range.[11]

Because the record conclusively demonstrates that Petitioner's request for specific enforcement of the two-level reduction is without merit, and because Petitioner failed to raise this issue on direct appeal, that portion of Petitioner's motion is denied without an evidentiary

---

"when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262-63. In the case at bar, the record clearly demonstrates that the two-level reduction was not an unconditional promise by the Government, but rather was contingent on Petitioner refraining from further obstructive conduct. In other words, the Government kept its promise to make the two-level reduction available *if* Petitioner's conduct warranted it.

[11] To the extent that Petitioner's brief can be read as arguing that the *Court* breached the terms of the Plea Agreement, that argument is without merit. A significant portion of the plea allocution was devoted to the fact that the Plea Agreement and the stipulations contained therein were not binding on the Court, and that the Court was free to consider other factors that could result in a sentence either above or below the applicable Guidelines range. *See* Plea Tr. at 17-20. Each time these issues were put before him, Petitioner acknowledged his understanding on the record. *See id.*

hearing.  Moreover, no certificate of appealability will issue on this point, as Petitioner has failed

to make the requisite "substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (noting that, for a

certificate of appealability to issue, there must be a "showing that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed

further.'" (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

## IV.    Conclusion

For the reasons set forth above, Petitioner's motion to set aside his sentence is DENIED,

and no certificate of appealability will issue, to the extent that Petitioner alleges breach of the

Plea Agreement.  An evidentiary hearing with respect to Petitioner's ineffective assistance claim

will be held on **October 16, 2014 at 2:00 p.m.**

It is SO ORDERED.

Dated: July 2, 2014
       New York, New York

Edgardo Ramos, U.S.D.J.

19